# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

GREGORY THOMAS BERRY, et al.
Class Representatives/Appellees,

and

LEXISNEXIS RISK & INFORMATION
ANALYTICS GROUP, INC., et al.
Defendants/Appellees,

v.

MEGAN CHRISTINA AARON and the Aaron Appellants, SCOTT HARDWAY
and the Hardway Appellants, and ADAM E. SCHULMAN,
Parties-in-Interest/Appellants.

Appeal from the United States District Court
for the Eastern District of Virginia
Honorable James R. Spencer, District Court Case No. 3:11-cv-754

## COMBINED BRIEF OF APPELLANTS MEGAN AARON AND THE AARON APPELLANTS, ADAM SHULMAN, AND SCOTT HARDWAY AND THE HARDWAY APPELLANTS

Oral Argument Requested

Richard M. Paul III
Ashlea G. Schwarz
PAUL McINNES LLP
2000 Baltimore Avenue, Suite 100
Kansas City, Missouri 64108
(816) 984-8100
*Lead Counsel for Consolidated Appellants*
(additional counsel on signature block)

# CORPORATE DISCLOSURE STATEMENT

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2050__    Caption: __Berry, et al, LexisNexis, et al v. Megan Christina Aaron, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Megan Christina Aaron and The Aaron Objectors__
(name of party/amicus)

_____

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

10/28/2013 SCC                     - 1 -

ii

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is not required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-2050                 Caption: Berry, et al, LexisNexis, et al v. Scott Hardway, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Scott Hardway and the Hardway Objectors
_____

_____

Who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent.amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☒ NO


2.    Does party/amicus have any parent corporations?                    ☐ YES ☒ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                    ☐ YES ☒ NO

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-2006__     Caption: Berry, et al. and Lexisnexis, et al v. Adam E. Schulman

Pursuant to FRAP 26.1 and Local Rule 26.1,

Adam E. Schulman
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.   Does party/amicus have any parent corporations? ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity? ☐YES ☑NO
     If yes, identify all such owners:

10/28/2013 SCC                         - 1 -

# T<small>ABLE OF</small> C<small>ONTENTS</small>

Corporate Disclosure Statement.................................................................. ii

Table of Contents .......................................................................................... v

Table of Authorities ................................................................................. viii

Jurisdictional Statement .............................................................................. 1

Statement of the Issues Presented for Review.......................................... 2

Statement of the Case .................................................................................. 4

   I.  The Parties and Underlying Claims ..................................................... 4

   II.  The Settlement ...................................................................................... 6

   III.The Settlement Approval Process ....................................................... 9

Summary of the Argument......................................................................... 11

Argument...................................................................................................... 13

   I.  The District Court Erred in Certifying a (b)(2) Class Because Rule 23(b)(2) and Due Process Preclude Certification Under Subsection (b)(2) When Monetary Damage Claims Predominate. ................................................. 13
     A. Standard of review: abuse of discretion .......................................... 13
     B. The District Court erred in finding that the (b)(2) Class Members' FCRA claims exclusively for monetary damages did not predominate, because the FCRA does not provide for and Plaintiffs did not plead injunctive relief... 14
       1. The District Court's (b)(2) certification conflicts with the Fifth and Eleventh Circuits, which have held that a statutory claim that does not permit injunctive relief may not be certified under Rule 23(b)(2). .......... 16
       2. The District Court violated the Supreme Court's test for when claims for monetary damages are "incidental" to injunctive relief. ........................... 18
       3. The District Court violated the Supreme Court's mandate that Class Representatives may not manipulate the class process by simply characterizing claims for monetary damages as "incidental." .................. 19
       4. The District Court violated the congressional determination that only monetary damages matter in an FCRA claim. ........................................... 23
       5. The District Court violated this Court's determination that claims for monetary (statutory) damages are not incidental to injunctive relief. ..... 24
       6. The District Court erred when it made a clearly erroneous factual finding

that the primary relief sought was injunctive because Plaintiffs did not even seek injunctive relief in the Complaint. ............................................... 25

II. The District Court Erred in Certifying a (b)(2) Class Extinguishing Claims for Monetary Damages Without a Right to Opt-Out, Even if Such Damages Do Not Predominate. ............................................................................................ 26
   A. Standard of review: *de novo* ................................................................ 27
   B. Due process prohibits certification of claims for monetary damages without an attendant right to opt-out. ........................................................... 27
   C. Rule 23(b)(2) does not allow certification of monetary damages claims without a right to opt-out. ................................................................ 30

III. The District Court Erred in Certifying the (b)(2) Class Because the Structure of the Settlement Created Conflicts of Interest for the Class Representatives that Rendered Them Inadequate. ........................................................................ 31
   A. Standard of review: abuse of discretion .......................................... 32
   B. The (b)(3) and (b)(2) Classes Received Different Types of Relief Under the Settlement, Compelling Separate Representation for Each Class. ............... 32
   C. The substantial monetary payments to the Class Representatives and Class Counsel created an additional conflict. .............................................. 34

IV. The District Court Erred in Approving the (b)(2) Settlement Because the Extinguishment of FCRA Claims for Statutory Damages for No Money Whatsoever Is Not Fair, Reasonable, or Adequate. ............................................ 36
   A. Standard of review: abuse of discretion and d*e novo* ...................................... 36
   B. A class settlement that extinguishes claims for monetary damages possessed by 100 million consumers for no money whatsoever is *per se* unfair, unreasonable, and inadequate as a matter of law. .......................................... 37
     1. The Settlement releases for no money whatsoever more than 100 million (b)(2) Class Members' claims for $100 to $1,000 per FCRA violation... 39
     2. The Settlement treats (b)(3) and (b)(2) Class Members who possess equally strong claims substantially differently. ........................................... 43
     3. The Settlement fails to provide (b)(2) Class Members with viable FCRA claims anything more than it provides those members with no viable claims. ........................................................................................... 44
     4. The Settlement impermissibly immunizes Lexis from FCRA liability for a future product that was not at issue in this case and does not even exist today. ........................................................................................ 45

V. The Fee Award Must Be Vacated. .......................................................... 46
   A. Standard of Review. ........................................................................ 46
   B. The lower court erred in approving the full attorneys' fees requested. ........ 46

Conclusion................................................................................................................. 52

Certificate of Compliance with Rule 32(a)(7)............................................................. 53

# Table of Authorities

## Cases

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ........................... 41, 42, 44

*Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. CIV. 08-4708,
2010 WL 1931135 (D.N.J. May 12, 2010) ............................................... 4, 5, 24, 39, 40

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ............................ 18

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) ..................................... passim

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) ..................................... 48

*Blankenship v. Schweiker*, 676 F.2d 116 (4th Cir. 1982) ..................................... 49

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) .............................. 16, 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ...... 2, 32, 33

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992) ................................. 29

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008) ................................. 16

*Craig v. Health & Human Servs.*, 864 F.2d 324 (4th Cir. 1989) ............................ 51

*Crawford, v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000) ............... 41

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ......................................... 3, 48

*Devlin v. Scardelletti,* 536 U.S. 1 (2002) ......................................................... 1

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3rd Cir. 2012) ................ 35, 43

*Doe v. Chao*, 435 F.3d 492 (4th Cir. 2006) ..................................................... 50

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ............................. 27

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ...................................... 13, 32

*Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397 (W.D.N.Y. May 28, 2013) ...... 39

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ......................................... 37

*Frahm v. United States*, 492 F.3d 258 (4th Cir. 2007) ....................................... 46

*Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 WL 5838198
(N.D. Cal. Aug. 17, 2012) ......................................................................... 41

*Gisbrecht v. Barnhart*, 535 U.S. 789 (2002) ................................................... 51

*Gomez v. Kroll Factual Data, Inc.*, No. 13-CV-0445-WJM-KMT, 2014 WL 1456530
(D. Colo. Apr. 14, 2014) ........................................................................... 24

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) .................. 17, 29

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................... 50

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ......................................... 46

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ................................. 35

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) .......... 48

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ......................... 34, 35, 38, 39

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) .... 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) ...................................................................... 36, 38, 47

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ............................. 21

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011) ...... 34

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) .................................. 36, 37
*In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870 (6th Cir. 2000) .................................... 21
*Interfaith Cmt'y Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403 (3d Cir. 2013) ...................... 3, 48
*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ......................................................... 13, 46
*McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) ................................................................ 50
*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) .................................... 41, 43
*Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307 (D.N.J. 2003) ......................................... 25
*Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219 (4th Cir. 2009) ..... 49
*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................................... 31
*Perdue v. Kenny A.*, 559 U.S. 542 (2010) .................................................................. 50, 51
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................. 29, 31
*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013) .................................. 35
*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ........................... 22, 38, 49, 51
*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) ....................................... 41
*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) .................................. 17, 25
*Robinson v. Equifax Info. Servs.*, 560 F.3d 235 (4th Cir. 2009) ..................................... 48, 49
*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) .............................................. 15
*Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007) .............................................. 18, 44
*Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565
  (D. Nev. Jun. 27, 2011) ............................................................................................ 50
*Soutter v. Equifx Info. Servs., LLC*, 498 Fed. App'x 260 (4th Cir. 2012) ............................ 24
*Stillmock v. Weis Markets, Inc.*, 385 Fed. App'x. 267 (4th Cir. 2010) ................................. 24
*Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998) ................................. 47
*Thomas v. Peacock*, 39 F.3d 493 (4th Cir. 1994) ......................................................... 3, 48
*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ......................... 13, 25, 32
*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994) .................................................. 27, 29, 30
*United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012) ............................................. 27, 37
*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ....................................... 34
*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................... passim
*Wantz v. Experian Info. Solutions*, 386 F.3d 829 (7th Cir. 2004) ...................................... 44
*Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000) ....................... 16, 18, 44

## Statutes
15 U.S.C. § 1681 ...................................................................................................... passim
28 U.S.C. § 1291 .............................................................................................................. 1
28 U.S.C. § 1331 .............................................................................................................. 1

## Other Authorities
Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket
  Guide for Judges*, Second Edition, (Federal Judicial Center 2009) ................................ 37
Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action
  Settlement*, 59 Fla. L. Rev. 71, 73 (2007) ................................................................. 22

**Rules**

FED. R. CIV. P. 23 ...............................................................................................................passim

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction in this case under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681p, and federal question jurisdiction in this case under 28 U.S.C. § 1331. This Court has appellate jurisdiction in this case under 28 U.S.C. § 1291 to review the final order of the District Court granting final approval of the class action settlement and disposing of all claims against all parties (the "Final Order").

The Final Order was entered on September 5, 2014. (Appendix ("Appx."), p.2859.) Each of Appellants timely objected to the class action settlement and timely filed a notice of appeal from the Final Order: Objector Schulman on September 22, 2014; the Aaron Objectors on September 29, 2014; and the Hardway Objectors on October 8, 2014. (*Id.* at 2898, 2903, 2906.) Appellants have standing to appeal without formal intervention in this case. *Devlin v. Scardelletti,* 536 U.S. 1 (2002).

(1)   The Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) that "[i]n the context of a class action predominantly for money damages [the] absence of notice and opt-out violates due process." 131 S. Ct. 2541, 2559 (2011). Here, the underlying FCRA claims are **exclusively** for monetary damages and the Complaint alleged claims **exclusively** for monetary damages. Did the District Court err in certifying a Rule 23(b)(2) class action predominantly for monetary damages with no attendant right to opt-out?

(2)   The Supreme Court recognized in *Dukes* "the serious possibility" that Rule 23(b)(2) may **never** be used to extinguish claims for monetary damages, even when such damages do not predominate. *Id.* Did the District Court err in certifying a Rule 23(b)(2) class extinguishing monetary damage claims with no right to opt-out, even if such damages do not predominate?

(3)   In *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998), this Court reversed class certification for failure to appoint separate class representatives where there was "a conflict of interest between different groups of [class members] with respect to the appropriate relief." Under the Settlement here, one group of consumers received money damages, while a second group received solely injunctive relief. Did the District Court err in appointing the same class representatives and counsel for both groups of consumers?

(4)     FED. R. CIV. P. 23 (e)(2) provides that a district court may only approve a class

settlement that is fair, reasonable, and adequate. Did the District Court err in

approving a Rule 23(b)(2) class settlement that extinguishes claims for monetary

damages for no money whatsoever?

(5)     Judicial engagement requires a "reasoned response" to all non-frivolous

objections to settlement approvals or fee awards. *Dennis v. Kellogg Co.*, 697 F.3d

858, 864 (9th Cir. 2012); *Thomas v. Peacock*, 39 F.3d 493, 507 (4th Cir. 1994), *rev'd

on other grounds*, 516 U.S. 349 (1996); *Interfaith Cmt'y Org. v. Honeywell Int'l, Inc.*, 726

F.3d 403, 416 (3d Cir. 2013). Here, in a single paragraph and without addressing

any of the objections to class counsel's proposed attorneys' fees, the District

Court approved an award of $5,333,188.21 to class counsel in connection with a

Rule 23(b)(2) settlement that extinguishes claims exclusively for monetary

damages for no money whatsoever and with no right to opt-out. Did the District

Court err in failing to respond to the objections?

## STATEMENT OF THE CASE

## I.    The Parties and Underlying Claims

Defendants LexisNexis Risk Solutions FL Inc., LexisNexis Risk Data Management Inc., and Reed Elsevier Inc. (together "Lexis") sell Accurint® reports to debt collectors. (Appx. 2859.) Lexis does not treat these reports as "consumer reports" regulated by the FCRA. (*Id.* at 2860.) Thus, Lexis does not comply with the FCRA's requirements to (1) ensure such reports are only used for a "permissible purpose" under the FCRA and obtain a certification to that effect from debt collectors, (2) provide information to consumers about the content of their reports upon their request, and (3) investigate and resolve consumer disputes regarding their reports. (*Id.* at 37-39.)

Before this case, *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. CIV. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) rejected Lexis' position that Accurint is not a consumer report as a matter of law; then, the case settled. *Id.*

Plaintiffs Gregory Berry, Summer Darbonne, Rickey Millen, Shamoon Saeed, Arthur Hernandez, Erika Godfrey, and Timothy Otten (together the "Plaintiffs" or "Class Representatives") filed suit against Lexis on November 14, 2011. The Complaint asserted three separate claims for violations of the FCRA, one claim each on behalf of three separate, but overlapping, "classes" of people: the "Impermissible Use" class, the "File Request" class, and the "Dispute" class—each of which was proposed for certification under Fed. R. Civ. P. 23(b)(3) and each sought monetary damages. (Appx. at 18-41.)

Plaintiffs alleged that Lexis violated: (1) § 1681e(a) of FCRA as to the Impermissible Use class by having no procedure to ensure that Accurint is only used for permissible purposes and obtaining a certification to that effect; (2) §§ 1681g-i of FCRA as to the File Request class by failing to provide information to consumers about the content of their reports on request; and (3) § 1681i of FCRA as to the Dispute class by failing to investigate and resolve consumer disputes. (*Id.* at 18.)

All three claims hinged on whether Accurint was a "consumer report" regulated by FCRA. As the Plaintiffs and Lexis jointly explained:

> Class Representatives contend that Accurint® as created, packaged and sold meets the FCRA's definition of "consumer report." Defendants deny that the definition is met. This dispute is the core of this litigation.

(Appx. at 208.) If Accurint **was** a consumer report, then Lexis must comply with the three FCRA requirements. If Accurint was **not** a consumer report, then those requirements would not apply to Lexis.

The Complaint sought exclusively monetary damages: statutory damages, actual damages, and punitive damages. (Appx. at 40.) The Complaint did not seek injunctive relief. (*Id.*) Among other claims, Plaintiffs alleged that Lexis was liable for statutory damages for its willful violation of FCRA:

> LexisNexis's failure to modify its practices and/or conform them to the FCRA post *Adams* is the results [sic] of a deliberate corporate decision to disregard the findings of federal courts.

(*Id.* at 26.) Thus, Plaintiffs believed and alleged that Lexis' conduct was willful.

The Complaint sought certification of three Rule 23(b)(3) classes as follows:

(1)     an "Impermissible Use" class of all persons who were the subject of an Accurint report that Lexis furnished to a private (non-governmental) party; class composed of approximately 100 million consumers;

(2)     a "File Request" class of persons who requested a copy of their Accurint report; and

(3)     a "Dispute" class of persons who wrote Lexis complaining about their Accurint report.

(*Id.* at 18-41.) The Complaint did not seek certification under Rule 23(b)(2), nor did it allege that final injunctive relief or corresponding declaratory relief was appropriate respecting the class as a whole. (*Id.*)

## II.     The Settlement

Before a single contested motion was filed by either party, and before Plaintiffs moved for class certification, Plaintiffs and Lexis (together "Appellees") entered into a class settlement and moved for preliminary approval of the Settlement on March 15, 2013. (Appx. at 45, 48.)

The Settlement creates two classes: a class certified under Rule 23(b)(3) (the "(b)(3) Class") and a class certified under Rule 23(b)(2) (the "(b)(2) Class"). The (b)(3) Class is a combination of the "File Request" and "Dispute" classes sought in the Complaint:

All persons … who … requested a copy of an Accurint® Report containing information about themselves *or* initiated or submitted a dispute or other inquiry regarding an Accurint® Report….

(*Id.* at 2868 (emphasis added).)

The (b)(2) Class significantly expanded the proposed "Impermissible Use" class in the Complaint from only persons in connection with whom Lexis had *sold a report*, the (b)(2) Class includes any person in connection with whom Lexis *has any data in their database*: "All persons … about whom information resided in the Accurint® Database…." (*Id.* at 2863.) The expanded scope increased the size of the Impermissible Use class to approximately 200 million consumers, which includes nearly every person in the United States, its territories, and Puerto Rico. (*Id.* at 2861.)

For the (b)(3) Class, the Settlement provides a common fund of $13.5 million to be distributed *pro rata* to the (b)(3) Class Members, equating to about $435 per (b)(3) Class Member before attorneys' fees. (*Id.* at 2868.) Plus, the District Court ordered direct notice by mail to each (b)(3) Class Member (Appx. at 136) that provided the (b)(3) Class Members the right to opt-out of the settlement. (*Id.*)

In contrast, the District Court did not provide the (b)(2) Class with the same protections, namely direct notice or a right to opt-out of the (b)(2) Class, even though Lexis had in its files the full name and last known address for each Class Member. (*Id.* at 611.) Instead, the District Court ordered notice by publication with no right to opt-out. (*Id.* at 616-21.)

The (b)(2) Class provides no monetary relief to the (b)(2) Class Members, but extinguishes each (b)(2) Class Member's FCRA claims for statutory damages. (*Id.* at 2863-67.) In lieu of monetary relief, the (b)(2) Class Members receive the following:

- Lexis will "overhaul" its "Accurint for Collections" product by dividing it into a "Collections Decisioning" product subject to the FCRA's requirements and a "Contact & Locate" product with respect to which Lexis will not comply with the FCRA;

- Lexis will display language related to the FCRA's requirements on the "Collections Decisioning" website; require customers to certify a permissible use under the FCRA; and purport to require customers to, in fact, use the information provided for FCRA-permissible uses only;

- For the new "Contact & Locate" product, Lexis will display information on their website explaining and purporting to limit how their customers may use that information;

- Lexis will provide free "educational seminars" regarding its new products;

- Lexis will educate its own employees about its own products; and

- Lexis will allow consumers limited access to certain information in the "Contact & Locate" product and a limited ability to provide comments on such information.

(*Id.*)

The Settlement sets forth a proposed timeline for implementing this injunctive relief. (*Id.* at 2866.) Until Lexis converts Accurint into two separate reports, it can continue to sell the Accurint report as is. (*Id.* at 2866-67) During this implementation period, Lexis is immune from statutory damages for its sale of Accurint (*id.* at 2867); and, once implemented, Lexis is immune from all statutory damages until 2020 for its "Contact & Locate" product (*id.*), even though the report has not yet been created and thus may in fact still violate the FCRA.

Per the Settlement, the (b)(2) Class Members:

- Waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or non-contingent ***willful*** Non-

compliance Remedies awith respect to Lexis based on any Covered Conduct, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts (*Id.* at 129, ¶ 4.5.1);

- Waive the right to bring claims for actual damages in any class or mass action (*Id.* at 130, 4.5.2);

- Waive any challenge to Lexis' "collect once, use twice" data practices and to its "Post Settlement Products" (*Id.* at 131, 4.5.4); and

- Exempt the new "Contact & Locate" product from any judicial review for compliance with the FCRA or its "state equivalents" until 2020 (*Id.* at 119, 4.3.1.2).

Per the Settlement, each Class Representative could seek an unopposed incentive award of $5,000 plus the $435 for being a member of the (b)(3) Class, and Class Counsel could seek unopposed attorneys' fees of $4,050,000 (30% of $13.5 million) in connection with the (b)(3) Class and $5,500,000 in connection with the (b)(2) Class (for total fees of $9,550,000). (Appx. 140-41 (for the (b)(3) Class), 128 (for the (b)(2) Class).)

## III. The Settlement Approval Process

The District Court granted preliminary approval to the Settlement. (*Id.* at 611.) It appointed all named plaintiffs as Class Representatives of both the (b)(2) and (b)(3) Classes. (*Id.* at 615.) It also appointed their counsel as Class Counsel of both Classes. (*Id.*)

Appellants consist of three groups of (b)(2) Class Members who separately objected to the (b)(2) settlement. The "Aaron Appellants" consist of 20,206 (b)(2) Class Members who hired counsel to prosecute their FCRA statutory damage claims against Lexis. (*Id.* at 708.) The "Hardway Appellants" consist of 7,289 (b)(2) Class Members

who hired counsel to prosecute their FCRA statutory damage claims. (*Id.* at 2862.) And, Schulman is a (b)(2) Class Member representing himself, *pro se*, to protect his statutory (monetary) claims against Lexis. (*Id.* at 655.)

After holding a final approval hearing, the District Court granted final approval of the Settlement, certified both the (b)(3) and (b)(2) Classes, overruled all objections, ordered an incentive award of $5,000 to each Class Representative, and approved Class Counsel's full attorneys' fees request of $3,375,000.00 in connection with the (b)(3) Class and $5,333,188.21 in connection with the (b)(2) Class, for a total fee of $8,708,188.21. (*Id.* at 2859.)

Appellants timely appealed. (*Id.* at 2898, 2903, 2906.) Appellants appeal the certification of the (b)(2) Class and the approval of the Settlement. In addition, Appellant Schulman challenges the District Court's order granting the application for fees and expenses.

## SUMMARY OF THE ARGUMENT

Despite the Supreme Court's mandate that non-incidental monetary damage claims may not be certified without a right to opt out of the class, and its suggestion that even incidental monetary damage claims may not be certified without a right to opt out, the District Court certified FCRA claims that are exclusively for monetary damages, without the right to opt out. Even worse, the settlement releases those monetary damage claims of 100 million people for no money whatsoever. Over 27,000 class members objected, seeking what the Supreme Court has declared they have the right to do: opt out and bring their claims individually.

The District Court erred in certifying the (b)(2) class for three main reasons. First, the Supreme Court has held that claims that are predominantly for monetary damages must provide class members the right to opt out. Here, FCRA provides and the Complaint seeks exclusively monetary relief, so the District Court erred in denying opt out rights. Second, even if the claims were merely incidental to injunctive relief, the Supreme Court has suggested that monetary damages may ***never*** be certified without the right to opt out. Thus, even if the claims were incidental, the District Court erred in denying opt out rights. Third, if, contrary to Supreme Court precedent, the Court were to define the "claim" as the relief sought in the Settlement, certification was still improper. In that case, the Class Representatives had a clear conflict of interest because the two classes sought different types of relief. This Court has held that certification is not proper when two groups seek different types of relief.

The District Court also erred substantively: the terms of the settlement were not fair, reasonable, or adequate. As a matter of law, a settlement that releases monetary damage claims for no money is not fair, reasonable, or adequate. In addition, the claims of both the (b)(2) and (b)(3) classes were equally strong because they both hinged on the same question: whether Accurint is a "consumer report" under FCRA. The settlement is unfair, unreasonable, and inadequate because it provides substantially different relief to the holders of two equally strong claims: $435 to the (b)(3) class and $0 to the (b)(2) class.

Lastly, the District Court failed to address Objector Schulman's challenges to Class Counsel's fee application, and was required by law to do so.

**ARGUMENT**

## I. The District Court Erred in Certifying a (b)(2) Class Because Rule 23(b)(2) and Due Process Preclude Certification Under Subsection (b)(2) When Monetary Damage Claims Predominate.

A class action predominantly for money damages ***must*** provide class members with the right to opt-out. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011) ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."). The District Court denied the (b)(2) class members the right to opt out by certifying the Class under Rule 23(b)(2) based on a finding that the (b)(2) Class Members' FCRA claims for monetary damages did ***not*** predominate. This conclusion was incorrect given that ***the only claim possessed by the (b)(2) Class Members and sought in the Complaint was for monetary relief.***

### A. Standard of review: abuse of discretion

This Court reviews a district court's decision to certify a class for abuse of discretion. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). A district court abuses its discretion when it misapplies the requirements of Rule 23 or fails "to take into account judicially recognized factors constraining its exercise. *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993). "A district court *per se* abuses its discretion when it makes an error of law or clearly errs in its factual findings." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006).

**B. The District Court erred in finding that the (b)(2) Class Members' FCRA claims exclusively for monetary damages did not predominate, because the FCRA does not provide for and Plaintiffs did not plead injunctive relief.**

For six distinct reasons, the District Court erred in (1) concluding that the (b)(2) Class Members' FCRA claims for monetary damages did not predominate and (2) denying Appellants the right to opt-out of the class to preserve their claims for monetary damages that were released for no monetary consideration in the settlement. First, the District Court's (b)(2) certification of FCRA claims for monetary damages conflicts with the Fifth and Eleventh Circuits, which have held that a claim under a statute that does not permit injunctive relief (like FCRA) may not be certified under Rule 23(b)(2). Second, the District Court violated the Supreme Court's test for determining when claims for monetary damages are "incidental" to injunctive relief. Third, the District Court violated the Supreme Court's mandate that class representatives may not manipulate the class process by simply characterizing claims for monetary damages as "incidental." Fourth, in finding that injunctive relief was more important than monetary relief, the District Court violated the congressional determination that only monetary damages matter in an FCRA claim. Fifth, the District Court erred when it violated this Court's determination that claims for monetary damages are not incidental to injunctive relief. And, sixth, the District Court erred when it made a clearly erroneous factual finding that the primary relief sought was injunctive because Plaintiffs did not even seek injunctive relief in the Complaint.

The existence of a settlement does not eliminate the due process rights of absent class members; it increases the need to protect those rights. While a class settlement may include remedies not found in the statute giving rise to the claims, equally clear is that a class settlement must afford class members their full due process rights. The Supreme Court has held that it is "of vital importance" that class settlements conform to due process:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance….

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *see also Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013) ("Rule 23 has been amended to provide for settlement classes, but solely to add the additional hurdle of Rule 23(e), which mandates that the reviewing court find the settlement to be 'fair, reasonable, and adequate.' … That amendment 'was designed to function as an additional requirement, not a superseding direction' respecting the class-qualifying criteria of Rule 23(a) and (b)"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal citation omitted). Thus, the District Court's order certifying a (b)(2) class must conform to all the requirements of Rule 23(a) and (b)(2), plus afford full due process rights to class members, and the settlement must conform to the requirements of Rule 23(e).

1. **The District Court's (b)(2) certification conflicts with the Fifth and Eleventh Circuits, which have held that a statutory claim that does not permit injunctive relief may not be certified under Rule 23(b)(2).**

The District Court acknowledged that FCRA does not provide consumers a claim for injunctive relief. (Appx. 2878 ("FCRA does not provide individuals with a right to bring non-monetary claims")); *see Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC.")). And, the Complaint alleged claims exclusively for monetary damages. (Appx. at 18.)

Rule 23(b)(2) does not permit certification of claims exclusively for monetary damages. As the Fifth Circuit explained: "***Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion***." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) (emphasis added). The Eleventh Circuit agrees. *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) ("Because injunctive relief is not a remedy available under TILA to Christ and the plaintiff class, Rule 23(b)(2) certification under TILA was improper."). For that reason, courts refuse to certify Rule 23(b)(2) classes seeking relief under FCRA. *See, e.g., Washington*, 199 F.3d at 270 ("the consumers cannot maintain a class action [for FCRA claims] under Rule 23(b)(2)").

Permitting Rule 23(b)(2) certification for FCRA claims for monetary damages would create a split between the Fourth Circuit, on the one hand, and the Fifth and Eleventh Circuits, on the other. And, the reasoning of the Fifth and Eleventh Circuits is sound. Rule 23(b)(2) and FCRA are incompatible: Rule 23(b)(2) is designed to provide "injunctive relief … respecting the class as a whole." FCRA, on the other hand, provides **only** for monetary relief. Because FCRA provides consumers claims exclusively for monetary damages (and none for injunctive relief), ***it is axiomatic that such monetary damages cannot be "incidental" to unavailable injunctive relief.***

To determine whether monetary damages predominate over equitable relief, the Court must look to the Complaint, not the terms of the proposed settlement. *See Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 (4th Cir. 1976) ("The action here looks neither to injunctive relief nor does it demand a declaratory judgment which may serve as a basis for later injunctive relief."); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) ("If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class …."); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 223 (2d Cir. 2012) (monetary relief not incidental where "[t]he…complaint requested "the maximum statutory damages" under the FDCPA but failed even to mention injunctive relief"). Here, the (b)(2) Class Members' FCRA claims seek only money, which may not be certified and released without giving class members the right to opt-out.

## 2. *The District Court violated the Supreme Court's test for when claims for monetary damages are "incidental" to injunctive relief.*

Monetary damages are "incidental" to injunctive relief only to the extent such "damages … flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Dukes,* 131 S. Ct. at 2560 (*quoting Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). Here, the District Court could not properly conclude that the (b)(2) Class Members' claims for monetary damages were incidental.

Under FCRA, monetary damages *never* flow directly from liability to the class. If a plaintiff establishes liability alone, he is not entitled to monetary damages without additional proof. A claimant seeking actual damages must prove up those damages; a claimant seeking statutory damages must show willfulness. 15 U.S.C. § 1681n. In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007), for instance, the Court found that "Safeco's misreading of the statute was not reckless," so while it violated the statute, no monetary damages were owed. Thus, by definition, monetary damages are not incidental to injunctive relief in a FCRA claim. The Fifth Circuit recognized this in holding that FCRA claims may not be certified under Rule 23(b)(2):

> the money damages in this [FCRA] case do not flow from the declaratory relief but require separate adjudication, they predominate under *Allison.*

*Washington*, 199 F.3d at 269.

**3. *The District Court violated the Supreme Court's mandate that Class Representatives may not manipulate the class process by simply characterizing claims for monetary damages as "incidental."***

The District Court violated the Supreme Court's mandate prohibiting a class settlement from extinguishing claims for monetary relief by simply designating such damages as "incidental." That is, courts may not certify a Rule 23(b)(2) class with no right to opt-out based on the parties' representation of what relief is "predominant." Recognizing that very problem the Court reversed certification in *Dukes*:

> We fail to see why the Rule should be read to nullify these protections [of notice and opt-out] whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction. Respondents' predominance test, moreover, creates perverse incentives for Class Representatives to place at risk potentially valid claims for monetary damages.

*Dukes*, 131 S. Ct. at 2559. Here, the Class Representatives not only "place[d] at risk potentially valid claims for monetary damages," they **extinguished** (b)(2) Class Members' claims for statutory damages. In *Dukes*, the Court rejected the class representatives' attempt to manipulate the process through artful pleading and position their injunctive relief claim as predominate, finding that such pleadings:

> created the **possibility** … that individual class members' compensatory-damages claims would be **precluded** by litigation they had no power to hold themselves apart from…. That possibility underscores the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the Class Representatives' or go it alone—a choice Rule 23(b)(2) does not ensure that they have.

*Id.* (bold emphasis added). Here, Appellees do not present the mere "possibility" of extinguishing the (b)(2) Class Members' claim for statutory damages; they have

extinguished them. The release of claims for money damages underscores the need for (b)(2) Class Members to decide ***for themselves*** whether to accept the settlement terms or, in the alternative, as more than 27,000 (b)(2) Class Members have done, go it alone.

The Supreme Court has, on at least two recent occasions, instructed that putative class counsel and putative class representatives are not entitled to bind a class to that which they do not have the power to control. In both *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011) and *Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345 (2013) the Court addressed the consequences of counsel failing to obtain class approval and pleading a class claim just under the CAFA jurisdictional limit. Each time, the Court rejected any argument that the mere assertion of class claims could bind the class in the absence of proper due process protections. In *Bayer*, that meant that the denial of class certification could not bind the absent class members when certification was pressed in a different forum. In *Knowles*, it meant that class counsel could not unilaterally extinguish claims whose asserted value exceeded the CAFA jurisdictional floor. When combined with *Dukes*, these cases erect a formidable wall against class counsel trading away monetary claims of class members for whom they have no authority to speak with regard to monetary compensation.

Just as *Dukes* prohibited class representatives from putting claims for monetary damages at risk through artful pleading for injunctive relief, the District Court here should have refused to certify the (b)(2) class without providing adequate notice and a right to opt out. Instead, the District Court relied on the Class Representatives'

characterization of the claims:

> ***The Parties have determined*** that the violations alleged by the [(b)(2)] Class are largely procedural in nature and any claim for statutory damages by this Class was incidental to its interest in compelling changes to the Defendants' data practices.

(Appx. at 2863) (emphasis added.) In short, the District Court permitted the Class Representatives to engage in the manipulation prohibited by *Dukes*; *see also In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a [non-opt out] class is impermissible and highlights the problem with defining and certifying class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (highlighting the courts' "concern that plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections"). "[C]ertification does not hinge on the subjective intentions of the class representatives and their counsel in bringing suit." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

Due process compels a right to opt-out when extinguishing claims exclusively for monetary damages. This case illustrates the danger of permitting the parties to a settlement to unilaterally determine whether monetary damages predominate. Here, the Class Representatives pled FCRA claims for damages for over 100 million people, but now are extinguishing all statutory damage claims in exchange for Lexis' promise to revise Accurint in the future, $5,000 incentive awards to each Class Representative, and an agreement to pay millions of dollars in attorneys' fees to Class Counsel.

Given that many of the (b)(2) Class Members were the subject of debt collection efforts, common sense dictates that they would prefer money from Lexis rather than injunctive relief. Indeed, given the lack of direct notice like the (b)(3) class received, it is significant that over 27,000 (b)(2) Class Members who learned about the settlement want to opt out and prosecute their FCRA claims for statutory damages.

While the Class Representatives and Lexis may claim that Appellants represent a small percentage of the enormous (b)(2) Class whose FCRA claims the District Court extinguished, it would be naïve to assume that the silent (b)(2) Class Members support the Settlement. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (silence of class members "hardly shows 'acceptance' of the Settlement: rather it shows oversight, indifference, rejection, or transaction costs"); *see also In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1137 (7th Cir. 1979) ("Acquiescence to a bad deal is something quite different than affirmative support."); Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlement*, 59 Fla. L. Rev. 71, 73 (2007) (thoroughly analyzing why class member silence does not constitute endorsement of a class settlement). Of course, the low percentage response rate here is a function of the enormous size of the (b)(2) Class and the lack of direct notice. Most importantly, however, **the silence of other class members does not justify the elimination of the due process rights of the Objectors**. Just as the class representatives may not deprive the Objectors of their due process rights, neither may the other class members through their silence.

4. ***The District Court violated the congressional determination that only monetary damages matter in an FCRA claim.***

For FCRA recovery, Congress could have provided (1) monetary relief, (2) injunctive relief, or (3) both. The only relief Congress mentioned was monetary, even if this Court were to determine that injunctive relief is available. And Congress granted the FTC the right to seek injunctive relief in 15 U.S.C. § 1681s. Thus, Congress expressed its intent that, even if injunctive relief is available, monetary relief is the predominant relief for an FCRA claim because it is *the only relief Congress mentioned.* Congress' disparate treatment of private litigants and the FTC reveals Congress' intent, and it reveals the District Court's error, when it ignored such intent and found that FCRA's exclusive remedy for the (b)(2) Class was incidental to injunctive relief.

The District Court relied on the fact that parties may negotiate for relief that is not available under FCRA in fashioning a settlement (Appx. at 2878.), but that does not permit the District Court to deny the (b)(2) Class the right to opt-out. Parties are certainly capable of entering into a settlement agreement that provides relief that would not be available under the statute. **But the parties still may not release claims for monetary relief without giving class members the right to opt-out.** While they may trade their own statutory damage claims for an injunction that is not recoverable under the statute, they may not force others to do so. And they certainly may not re-characterize a statutory claim that Congress determined is primarily for monetary damages into one that is not.

**5. *The District Court violated this Court's determination that claims for monetary (statutory) damages are not incidental to injunctive relief.***

The District Court erroneously concluded that the (b)(2) Class Members' FCRA claims for statutory damages are not individualized and, therefore, are incidental:

> [T]he statutory damages at issue in this case are not individualized…. [T]he appropriate amount of statutory damages would also be uniform as to each of the class members, and is not "individualized" because it is the product of rote calculation. … The only claims released are non-individualized statutory damages claims.

(Appx. 2878.) However, **this Court has twice explained that FCRA claims for statutory damages are individualized**. *See Soutter v. Equifax Info. Servs., LLC,* 498 Fed. App'x 260, 265 (4th Cir. 2012) ("Soutter is claiming only statutory damages, which typically require an individualized inquiry."); *Stillmock v. Weis Markets, Inc.,* 385 Fed. App'x. 267, 277 (4th Cir. 2010) (Wilkinson, J. concurring) ("because statutory damages are intended to address harms that are small or difficult to quantify, evidence about particular class members is highly relevant to a jury charged with this task"); *see also Gomez v. Kroll Factual Data, Inc.,* No. 13-CV-0445-WJM-KMT, 2014 WL 1456530, *4 (D. Colo. Apr. 14, 2014) ("The individualized nature of an FCRA claim—particularly one seeking statutory damages—has led most courts to deny class certification in these types of cases"). Particularly here where the (b)(2) Class Members' claims are so diverse as to whether they have current or future claims, pre-*Adams* or post-*Adams* claims, or the host of other factors that arise in a class this big, these damages are individualized.

**6. *The District Court erred when it made a clearly erroneous factual finding that the primary relief sought was injunctive because Plaintiffs did not even seek injunctive relief in the Complaint.***

In *Dukes*, the Court held that to extinguish a claim predominantly for monetary damages, the parties must first provide class members the right to opt-out. 131 S. Ct. at 2559. The "claim" must be characterized by the statute, not by the class representatives, lest the latter manipulate their complaint, as the Class Representatives tried to do on the eve of the final fairness hearing (Dkt. 114-15) to recast their original claims for monetary damages into claims for injunctive relief.

Here, not only was injunctive relief not available under FCRA, the Complaint did not request injunctive relief. As such, the District Court erred in looking to the settlement to determine whether monetary damages are the predominant form of relief sought. *Thorn,* 445 F.3d at 329 ("we have held that Rule 23(b)(2) does not cover cases where the primary claim is for damages"); *Lukenas*, 538 F.2d at 596 ("It is a monetary judgment that the plaintiffs seek and that is obvious from the phrasing of their prayer."); *Richards*, 453 F.3d at 530; *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307, 319 (D.N.J. 2003) ("Examining the Complaint, the Court finds that the requested damages are incidental to the injunctive relief sought.").

It is axiomatic that if Plaintiffs sought only monetary damages in their Complaint, such damages could not be incidental (or anything other than predominant). Indeed, the Complaint made no mention of injunctive relief or Rule 23(b)(2) in advance of the Settlement.

Importantly, when taken to its logical conclusion, the District Court's analysis leads to an absurd result. For example, had the Settlement contained the same class definitions and release of claims, but also included $10 for each (b)(2) Class Member, then Appellees would clearly have been compelled to seek (b)(3) certification, as they did in the Complaint. But, by allocating no money to the (b)(2) Class Members, the District Court concluded, in error, that Appellees could circumvent Rule 23(b)(3) safeguards. Such a perverse analysis defies the Constitution, *Dukes*, this Court, and the other Circuits that have addressed these issues.

## II.    The District Court Erred in Certifying a (b)(2) Class Extinguishing Claims for Monetary Damages Without a Right to Opt-Out, Even if Such Damages Do Not Predominate.

Even if the (b)(2) Class Members' FCRA claims exclusively for monetary damages are incidental to the injunctive relief provided in the Settlement, the District Court erred in certifying – and releasing – the statutory damage claims without providing a right to opt-out. While the Supreme Court has not reached the ultimate issue, it has strongly suggested that Rule 23(b)(2) may ***never*** be used to certify a monetary damages claim without an attendant right to opt-out. If this Court concludes that the (b)(2) Class Members' claims for monetary damages are somehow incidental, this Court will need to reach this issue; in which case, the Court should note the guidance provided by the Supreme Court and rule that both due process and Rule 23(b)(2) prohibit the (b)(2) certification of FCRA claims for monetary damages, whether incidental or not, absent an attendant right to opt out.

## A. Standard of review: *de novo*

Whether monetary claims may be waived under Rule 23(b)(2) without providing a right to opt-out is a pure question of law. *See Dukes,* 131 S. Ct. at 2559. This Court reviews pure questions of law *de novo. United States v. Mouzone*, 687 F.3d 207, 221 (4th Cir. 2012).

## B. Due process prohibits certification of claims for monetary damages without an attendant right to opt-out.

The Supreme Court has noted "the serious possibility" that (b)(2) certification of a class action involving *any* money damage claims would violate the Due Process Clause. *Dukes*, 131 S. Ct. at 2559; *accord Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (dismissing certiorari as improvidently granted, but noting "substantial possibility" that actions seeking monetary damages may only be certified under Rule 23(b)(3) because that section "permits opt-out"). While some lower courts had previously permitted the certification of "incidental" money-damage claims in Rule 23(b)(2) non-opt-out classes, at least one circuit has recognized that *Dukes* casts doubt on those cases:

> Although we have previously held that in "Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation," … this standard has been called into doubt by the Supreme Court.

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).

Based on *Dukes*, there is no logical basis for permitting any claims for monetary damages to be certified under Rule 23(b)(2) without a right to opt-out. If due process prohibits extinguishing a claim for monetary damages without a right to opt-out, there

is no justification for eliminating that protection simply because the same claim – which is deserving of due process protection when standing alone – is coupled with a claim for injunctive relief.

This case illustrates the problem. Here, FCRA provides a remedy to the (b)(2) Class – to wit, monetary damages. However, in settlement talks, Plaintiffs and Lexis agreed to recast the entire dispute as one for injunctive relief. By doing so, the Class Representatives and Lexis took the position that by compromising statutory damages under FCRA in exchange for injunctive relief, the District Court was relieved of the obligation to provide absent class members with adequate notice and a right to opt-out. Lexis thus extinguished exposure to statutory damages of $100-$1,000 to more than 100 million (b)(2) Class Members without paying them a penny, and simply agreeing to do what the law already required it to do.

Importantly, a hard and fast opt-out requirement in connection with the release of claims for monetary damages, even if such claims do not predominate, is consistent with the Rule 23(b)(2). The purpose of Rule 23(b)(2) is to provide injunctive relief to all affected parties when "final injunctive relief … is appropriate respecting the class as a whole," and, appropriately structured, Appellants support the application of Rule 23(b)(2). Appellants' position in this appeal does no violence to use of a (b)(2) class to implement class-wide injunctive relief, because a court may still bind all class members as to their injunctive claims; it must simply permit them to opt-out their monetary damage claims.

When a class settlement will extinguish claims for monetary damages, a right to opt-out is constitutionally required. As the Supreme Court has explained:

> [In order for a class judgment] to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. … Additionally, … due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class.…

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (footnote and citations omitted). There, the plaintiffs attempted to bind class members concerning claims wholly or predominately for money judgments, and its ruling was so limited. Subsequent courts have recognized, however, that the core principles of due process recognized in *Shutts* preclude extinguishing a claim for any money damages without a right to opt-out. *See, e.g., Brown v. Ticor Title Ins. Co.*, 982 F.2d 386 (9th Cir. 1992).

In *Brown*, the Ninth Circuit applied *Shutts* to a situation involving the "foreclosure of substantial damage claims," holding that because an absent plaintiff "had no opportunity to opt out" of the prior litigation, "there would be a violation of minimal due process if [his] damage claims were held barred by *res judicata*." *Id.* at 392. The absent plaintiff "will be bound by the injunctive relief provided by the settlement," the court explained, "but *res judicata* will not bar [his] claims for monetary damages." *Id.*; *see also Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012). Due process prohibits courts from disposing of those claims without giving them the option to opt out. The District Court thus erred in certifying the (b)(2) Class as a non-opt-out class.

## C. Rule 23(b)(2) does not allow certification of monetary damages claims without a right to opt-out.

Even if Due Process permitted certification of claims for monetary damage without the right to opt-out, Rule 23(b)(2) itself does not. As with the Due Process issue, the Supreme Court has not reached this ultimate issue:

> Our opinion in *Ticor Title Ins. Co. v. Brown*, … expressed serious doubt about whether claims for monetary damages may be certified under [Rule 23(b)(2)]. … One possible reading of this provision is that it applies *only* to requests for such injunctive relief and does not authorize the class certification of monetary claims at all.

*Dukes*, 131 S. Ct. at 2557 (emphasis in original). This Court should follow the guidance from the Supreme Court as to how it would rule if faced with the issue.

By its terms, Rule 23(b)(2) does not apply to class actions seeking monetary damages. Because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class," the Supreme Court ultimately held that claims for monetary damages may not be certified under Rule 23(b)(2) "***at least*** where (as here) the monetary damages is not incidental to the injunctive relief." *Id.* (emphasis added).

The Supreme Court identified two reasons why claims for monetary damages are not appropriate in the Rule 23(b)(2) context: (1) the structure of Rule 23 and (2) avoiding constitutional hurdles (discussed above). The structure of Rule 23 makes clear that claims for monetary damages should not be certified under Rule 23(b)(2). "[I]ndividualized monetary claims belong in Rule 23(b)(3). The procedural protections

attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*." *Id.* at 2558. Simply put: if Rule 23(b)(2) was intended to permit certification of any claims for monetary damages, then it would include the same protections contained in Rule 23(b)(3). Since the drafters did not include those protections, they clearly intended that Rule 23(b)(2) not permit certification of any claims for monetary damages.

## III. The District Court Erred in Certifying the (b)(2) Class Because the Structure of the Settlement Created Conflicts of Interest for the Class Representatives that Rendered Them Inadequate.

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4); *Shutts*, 472 U.S. at 812 ("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members"). The adequacy of representation inquiry is also concerned with the conflicts of class counsel. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) ("In *Amchem*, we concentrated on the adequacy of named plaintiffs, but we recognized that the adequacy of representation enquiry is also concerned with the 'competency and conflicts of class counsel' "); *see also* Fed. R. Civ. P. 23(g)(4).

"The adequacy requirement serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. This is so because, "[t]he premise of a class action is that litigation by representative parties adjudicates the

rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). The problem of actual and potential conflicts is a matter of particular concern in a case, like this one, that prohibits a class member from opting out. *Id.*

Here, the Class Representatives did not adequately represent the interests of the (b)(2) Class because there was a conflict between the (b)(3) Class, who received money under the Settlement, and the (b)(2) Class, who received no money.

### A. Standard of review: abuse of discretion

This Court reviews a district court's decision to certify a class for abuse of discretion. *EQT*, 764 F.3d at 357. A district court abuses its discretion when it misapplies the requirements of Rule 23. *Id.* "A district court *per se* abuses its discretion when it makes an error of law or clearly errs in its factual findings." *Thorn*, 445 F.3d at 318.

### B. The (b)(3) and (b)(2) Classes Received Different Types of Relief Under the Settlement, Compelling Separate Representation for Each Class.

The critical factor for reversal of the class settlements in *Amchem* was that past and future claimants had differing interests in the relief obtained in the settlement even though the basis of the two groups' claims was the same – exposure to asbestos. Similarly here, the basis of the (b)(3) and (b)(2) Classes' claims is the same: that Accurint is a "consumer report" under FCRA. And, like in *Amchem*, the same Class Representatives negotiated for different relief for the two groups of class members.

There the Supreme Court held that the class representatives were not adequate because the two groups were getting different types of relief. *Amchem*, 521 U.S. at 626. A worse conflict exists here: the (b)(3) Class gets money, while the (b)(2) Class gets only injunctive relief.

In *Broussard*, this Court reversed class certification because, as here, there was "a conflict of interest between different groups of [class members] with respect to the appropriate relief." 155 F.3d at 337. The class representatives purported to represent three types of Meineke franchisees: (1) former franchisees, (2) current franchisees that had waived past damage claims, and (3) current franchisees that had not waived past damage claims. *Id.* at 338. The relief each group desired differed: (1) former franchisees sought only past damages, (2) current franchisees that had waived past damage claims were opposed to past damage claims, and (3) current franchisees that had not waived past damage claims supported past damage claims, although they were also interested in recovering money for an ongoing advertising account. *Id.* This Court reversed certification precisely because of this conflict regarding remedies.

This case presents an equally impermissible conflict: the (b)(3) Class obtains money and the (b)(2) Class obtains only injunctive relief. As shown above, the Settlement should not be the basis of characterizing the class claims, but if it is, as the District Court held, then there is a clear conflict here regarding the remedies awarded to each class. This case presents an analogous conflict of interest as *Broussard* and requires the same outcome: reversal of class certification.

Despite the conflict between the (b)(3) and (b)(2) Classes regarding the relief they receive in the Settlement, the District Court appointed the same class representatives and counsel for both classes. In appointing Class Counsel, the District Court did not even distinguish between the two classes, and appointed the same counsel for the combined class. Thus, despite the fact that the two classes had clear conflicting interests, no one was solely focused on protecting the interests of the (b)(2) Class. By failing to appoint separate class representatives and counsel for each class, the District Court violated Rule 23(a)(4) and the due process rights of the (b)(2) Class. *See, e.g., In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011).

### C. The substantial monetary payments to the Class Representatives and Class Counsel created an additional conflict.

A second conflict renders the Class Representatives inadequate: the substantial monetary payments to them and Class Counsel. The court in *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013), explains the conflict. The plaintiffs sought class certification in their complaint under Rule 23(b)(3) but settled for a Rule 23(b)(2) non-opt-out class. *Id.* at 716. And, like this case, the class representatives received money while absent class members received no money; the latter received only the defendants' agreement to change its practices in the future. *Id.* The Court noted that:

> "[I]n evaluating the fairness of a settlement," therefore, we look in part "to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013).

*Id.* at 718.

The *Pampers* court found there to be a conflict: "having been promised the award, the class representatives had 'no interest in vigorously prosecuting the [interests of] unnamed class members[.]'" *Id.* at 722. The *Pampers* court was particularly concerned because, like here, class counsel received a multi-million dollar award while "the agreement provides unnamed class members a medley of injunctive relief." *Id.* Finding that the settlement gave only perfunctory relief to unnamed class members, the court reversed the settlement. *Id.* at 721; *see also Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).

Here, in exchange for extinguishing the claims for statutory damages possessed by more than 100 million (b)(2) Class Members, all of whom will receive no money, Lexis agreed to pay the Class Representatives and Class Counsel over $9.55 million, and under the Court's judgment will receive more than $8.7 million. They had no incentive to hold out (and did not hold out) for a settlement that provided money to the (b)(2) Class.

Because each of the (b)(3) and (b)(2) settlements are contingent on final approval of the other settlement (Appx. at 147), it is clear that the Class Representatives and Class Counsel cannot collect their money unless and until they deliver on extinguishing the (b)(2) Class Members' claims for statutory damages. By making the Class Representatives and Class Counsel's more than $9.55 million payday contingent on final approval of the (b)(2) Class Settlement, Lexis has, in effect, pitted the Class Representatives and Class Counsel against the (b)(2) Class, presenting a *per se* conflict.

**IV. The District Court Erred in Approving the (b)(2) Settlement Because the Extinguishment of FCRA Claims for Statutory Damages for No Money Whatsoever Is Not Fair, Reasonable, or Adequate.**

A court may only approve a class settlement if it is fair, reasonable, and adequate.

FED. R. CIV. P. 23(e)(2). In making that determination:

> [T]rial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 782 (3rd Cir. 1995) ("*GM Trucks*")). The District Court erred in approving the Settlement for the following reasons: (1) the Settlement releases more than 100 million (b)(2) Class Members' claims for $100 to $1,000 per FCRA violation for no money whatsoever; (2) the Settlement treats (b)(3) and (b)(2) Class Members who possess equally strong claims substantially differently; (3) the Settlement fails to provide (b)(2) Class Members with viable FCRA claims for monetary (statutory) damages anything more than it provides those members with no viable claims; and, (4) the Settlement impermissibly immunizes Lexis from FCRA liability for a future product that was not at issue in this case and does not even exist today.

**A. Standard of review: abuse of discretion and d*e novo***

The District Court acts as a fiduciary for the absent class members in considering a proposed class settlement. *GM Trucks*, 55 F.3d at 792. Settlements that take place prior to formal class certification, as here, require a higher standard of fairness. *Amchem*, 521

U.S. at 620-21. As the Third Circuit explained:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." We have explained that this "heightened standard is designed to ensure that Class Counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liab. Litig.*, 629 F.3d at 350 (internal citations omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946.

This Court reviews the approval of the Settlement under an abuse of discretion standard. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975). However, the Court reviews pure questions of law, such as whether a class settlement may release claims for monetary damages for no money whatsoever, *de novo. Mouzone*, 687 F.3d at 221.

**B. A class settlement that extinguishes claims for monetary damages possessed by 100 million consumers for no money whatsoever is *per se* unfair, unreasonable, and inadequate as a matter of law.**

Per the Settlement, every (b)(3) Class Member and Class Counsel receive substantial money, but the more than 200 million members of the (b)(2) Class, 100 million of which have current viable claims, receive no money whatsoever. The Federal Judicial Center has identified this very outcome as a "hot button indicator" of an unfair settlement: "At times parties have attempted to release a damages remedy without making any correlative payment to class members...." Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, Second Edition, (Federal Judicial Center 2009), at 20.

This case is a textbook example of that abuse. Far from being "fair, reasonable, and adequate" as required by Rule 23(e)(2), this Settlement is a (very) bad deal for the (b)(2) Class. Indeed, the (b)(2) Class could hardly do worse—particularly the half (or more than 100 million consumers) who were the subject of at least one illegal Accurint report. For years Lexis has (per the Complaint) willfully ignored 100 million of the (b)(2) Class Members' privacy rights under FCRA and illegally sold Accurint reports containing their personal information. And now, per the Settlement, Class Representatives and Lexis join arms to extinguish the (b)(2) Class Members' claims for statutory damages for a mere promise by Lexis to stop breaking the law. Compared to the relief sought in the Complaint, this Settlement fails miserably to fairly and reasonably resolve the claims of the (b)(2) Class. *See, e.g.*, *GM Trucks*, 55 F.3d at 810 ("the relief sought in the complaint" serves as a useful benchmark in deciding the reasonableness of a settlement."); *In re Bluetooth Headset*, 654 F.3d at 945 n.8 ("the value of the injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury").

To be clear, Appellants are not arguing actual collusion. But they need not, because although it is *necessary* that a settlement be at "arm's length" without express collusion between the settling parties, it is not *sufficient*. *Redman*, 768 F.3d at 628; *Pampers*, 724 F.3d at 717-18. Because "[t]he defendant, and therefore its counsel, is uninterested in what portion of the total payment will go to the class and what percentage will go to the class attorney" it is enough that the settlement evinces "subtle signs that class counsel have

allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted).

For a myriad of reasons, the Settlement is not fair, reasonable, or adequate and the District Court erred in approving it.

1. **The Settlement releases for no money whatsoever more than 100 million (b)(2) Class Members' claims for $100 to $1,000 per FCRA violation.**

FCRA provides a claim for recovery of $100 to $1,000 per violation. 15 U.S.C. § 1681n (a)(1)(A). While the parties to this appeal may argue about the value of these claims, the sheer size of the (b)(2) Class and the red flag raised by the *Adams* court, *see* 2010 WL 1931135, establish the (b)(2) Class Members' FCRA claims for monetary (statutory) damages have value, if not substantial value. *Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013) (rejecting a settlement providing injunctive relief in the form of a promise to comply with the law in the future because "the fact remains that the *class* claims which they are releasing must have some value—for why else would [the defendant] agree to the settlement?"). *Adams* made Lexis immediately vulnerable to the (b)(2) Class Members' claims; hence, Lexis' willingness to pay the money contemplated in the Settlement in exchange for the (b)(2) settlement.

While the Class Representatives and Lexis now denigrate the (b)(2) Class Members' FCRA claims for statutory damages (in sharp contrast to the damning narrative laid out in the Complaint), Class Counsel have been waging a war against Lexis under FCRA related to Accurint for years, winning a major battle in *Adams* when the court refused

to grant Lexis' motion for judgment on the pleadings. *See Adams*, 2010 WL 1931135. Importantly, Lexis never attempted to defeat the (b)(2) Class Member's claims for statutory damages before the District Court. Instead, its immediate objective was peace, as reflected by the fact that the parties announced the Settlement before the filing of a single contested motion. Indeed, as reflected in the transcript of the fairness hearing, the cost of the Settlement to Lexis is reportedly in excess of $30 million. (Appx. 2706, 2714.)[1] It is simply not credible for Lexis to agree to pay $30 million to settle claims that have no value. *See Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014).

Regardless of the strength of the (b)(2) Class Members' claims for statutory damages, the negotiated value of the claims cannot be zero. Yet, the absent (b)(2) Class Members' fiduciaries – the Class Representatives and Class Counsel – folded the tent at zero, content to win monetary relief for themselves, but not the more than 100 million (b)(2) Class Members with viable FCRA claims.

Several courts have rejected settlements that provide injunctive relief in exchange for the release of monetary damage claims. As one court observed:

> Regardless of the importance and value to plaintiffs of the injunctive relief, it cannot serve as meaningful consideration for a release of class members' claims for damages, statutory or actual.

---

[1] Notably, imposing costs on Lexis is not equivalent to conferring value to class members. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

*Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 WL 5838198, *3 (N.D. Cal. Aug. 17, 2012) (emphasis added); *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785-86 (7th Cir. 2004) (rejecting FCRA settlement providing no monetary damages to entire subclass having valid legal claims); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) (reversing settlement where defendants agreed to stop the challenged practice but paid no money to class members); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) (injunctive relief did not support release of monetary damage claims against H&R Block).

As the Seventh Circuit noted, "For persons who stay out of financial trouble, only damages matter." *Crawford*, 201 F.3d at 882. Similarly, in this case, **for (b)(2) Class Members who stay out of financial trouble and therefore avoid debt collectors in the future, only damages matter.** They will never be subject to another Collections Decisioning report to a debt collector, so they will receive no benefit from the injunction.

In *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), the court rejected a similar settlement in an FCRA class action. Ironically, Class Counsel for the Settlement in this case were counsel to a group of objectors that adamantly opposed the *Acosta* settlement. (*See* Appx. at 35.) Like here, the Settlement provided injunctive relief, but monetary damages only to a small portion of the class. *Acosta,* 243 F.R.D. at 382. The *Acosta* court rejected the settlement because injunctive relief may not support the release of monetary damage claims for past conduct:

> [O]ver two-thirds of the Settlement Class, and up to 10 million class members, will be completely ineligible for any economic relief under the Settlement. In order to avoid having their rights to recover under the FCRA extinguished in exchange for zero economic relief, the Settlement requires these class members to affirmatively opt out lest their claims be permanently relinquished under the Settlement's sweeping and indiscriminate release provisions.

*Id.* 388.

This case is even worse than *Acosta*: here, the District Court did not even provide the (b)(2) Class Members the right to opt-out. Just as the injunctive relief for future violations was not sufficient to support the waiver of past monetary damages in *Acosta*, the injunction, here, does not support extinguishing the (b)(2) Class Members' claims for statutory damages. As that court explained:

> The ability of the Settlement's injunctive relief to redeem an unsatisfactory settlement is even further crippled by the possibility that these changes to [defendants'] reporting procedures are inevitable. To the extent [defendants'] reporting procedures may actually violate the FCRA, these injunctive relief provisions are of no value.

*Id.* 395-96. As a matter of law, injunctive relief for future conduct may not support the release of monetary damages for past conduct. Because Lexis' promise to quit breaking the law is the sole consideration for Appellees' proposal to extinguish the (b)(2) Class Members' claims for statutory damages, the District Court erred in approving the Settlement.

**2.** ***The Settlement treats (b)(3) and (b)(2) Class Members who possess equally strong claims substantially differently.***

The Complaint challenged three things: (1) Lexis' sale of Accurint reports to third-parties (the "Impermissible Use" claim); (2) Lexis' decision to ignore consumers who requested a copy of their report (the "File Request" claim); and (3) Lexis' decision to ignore consumers who disputed information in their report (the "Dispute" claim). (Appx. 30-36.) All three claims turn on the same issue: whether Lexis' Accurint report is a "consumer report" for purposes of FCRA. As the Class Representatives explained: "Class Representatives contend that Accurint as created, packaged and sold meets the FCRA's definition of 'consumer report.' Defendants deny that the definition is met. This dispute is the core of this litigation." (*Id.* at 208.) If an Accurint report is a "consumer report," then Lexis is equally liable to all three groups; otherwise Lexis has no liability to any group.

Despite this fact, the Settlement delivers no money to the Impermissible Use class (half of the (b)(2) Class), but $435 per class member to the File Request and Disputes classes (or (b)(3) Class). In other words, the Class Representatives and Lexis have taken claims for which liability is necessarily the same and discounted one to zero and the other to $435 per class member. That establishes that the Settlement is unfair, unreasonable, and inadequate. *See Mirfasihi*, 356 F.3d at 785-86 (rejecting settlement providing no relief to entire subclass having valid legal claims); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3rd Cir. 2012) (rejecting representation as inadequate

where no relief was provided to certain class members); *Acosta*, 243 F.R.D. at 388 ("[t]he Court is aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another.").

3. ***The Settlement fails to provide (b)(2) Class Members with viable FCRA claims anything more than it provides those members with no viable claims.***

While the Settlement impermissibly treats class members with equal claims differently, it impermissibly treats class members with a viable claim the same as those who have no claim whatsoever. That too is unfair. Class Members with viable claims must receive something more than class members who have no claim.

The (b)(2) Class consists of two distinct groups: (1) consumers for whom Lexis sold an Accurint report (the "Impermissible Use" class in the Complaint) and (2) consumers for whom Lexis ***never*** sold an Accurint report but who were captured and lumped into the (b)(2) Class at the time of the Settlement as a perk to Lexis. The (b)(2) Class consists of "more than 200 million individuals." (Appx. at 207.) But, the Class Representatives and Lexis admit that only the approximate 100 million members of the "Impermissible Use" class in Complaint were the subject of one or more Accurint reports. (*Id.* at 209.)

For those (b)(2) Class Members who were never the subject of an Accurint report, they have no FCRA claim. There is no FCRA claim until information is released. *See Washington*, 199 F.3d at 267 ("the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure"); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47 (2007) ("There cannot be a consumer report without disclosure to a third party."). The "Impermissible Use" class members – those for whom Lexis sold an Accurint report – must receive something for their claim beyond that which is offered to those who have no claim at all. Yet, they don't. This presents another fatal flaw in the Settlement that makes it unfair, unreasonable, and inadequate.

4. **The Settlement impermissibly immunizes Lexis from FCRA liability for a future product that was not at issue in this case and does not even exist today.**

To make matters worse, the Settlement includes immunity for Lexis from future liability for future bad acts in connection with its future "Contact and Locate" product. (Appx. at 120-22, ¶4.3.1.2.) This product was not at issue in the Complaint; indeed, it does not even exist yet. Nevertheless, the Settlement "declares" that the product does not constitute a "consumer report" under FCRA and thereby releases Lexis from any future FCRA liability regarding a product that may or may not violate FCRA when developed. Indeed, because of the immunity obtained by Lexis in the settlement, it is incentivized to develop a report that is as far-reaching as possible even if it would otherwise violate FCRA.

This waiver of liability for the Contact and Locate product violates the "identical factual predicate" doctrine. Under that doctrine, a class settlement may not release claims unless they are based on the identical factual predicate of the complaint:

> A settlement agreement may preclude a party from bringing a related claim in the future "even though the claim was not presented and might not have been presentable in the class action," but only where the released

claim is "based on the identical factual predicate as that underlying the claims in the settled class action."

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). So, for instance, if a complaint alleges that a particular practice violates FCRA, a settlement could also release liability to the extent that same conduct violates a state statute.

But in this case there is no identical factual predicate. The Contract and Locate report is an entirely different, new, and as-yet-nonexistent report from the Accurint report at issue in the Complaint. Indeed, the products are so different that Plaintiffs themselves contend that the Accurint report is an FCRA "consumer report," but that the Contract and Locate report is not. Since the declaration regarding the Contract and Locate product waives Lexis' liability regarding that product, the District Court erred in approving the Settlement.

## V.      The Fee Award Must Be Vacated.[2]

### A. Standard of Review.

"[A] decision to award attorneys' fees is reviewed under an abuse of discretion standard" but "the legal determinations justifying an award… are reviewed *de novo*." *Frahm v. United States*, 492 F.3d 258, 263 (4th Cir. 2007). Failure to exercise independent judgment, *inter alia*, constitutes an abuse of discretion. *James*, 6 F.3d at 239.

### B. The lower court erred in approving the full attorneys' fees requested.

Beyond the impermissible (b)(2) certification and the unbridled waiver of future

---

[2] This Section V and all argument contained herein is brought on behalf of *Schulman* only. The *Aaron and Hardaway* objectors do not join in these arguments.

claims, there is an additional independent ground for reversal: Class Counsel's $5.5 million 23(h) award. Under the District Court's order (Dkt. 81), *Schulman* provided an additional 22-page supplemental objection, arguing *inter alia*, (1) the fee was excessive in relation to the class's lack of success, (2) certain Class Counsel team members' hourly rates were not reasonable, (3) the lodestar submissions were inadequately detailed, and (4) no multiplier should be awarded. (Appx. 2406-19).

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process," Advisory Committee Notes on 2003 Amendments to Rule 23. Exercising oversight over Class Counsel's fee request is an "essential part of [the court's] role as guardian of the interests of class members. To properly fulfill its Rule 23(e)[3] duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998); *GM Trucks*, 55 F.3d 768, 819-20 (3d Cir. 1995) (requiring "a thorough judicial review of fee applications ... in all class action settlements" because "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense") (internal quotations omitted).

Notwithstanding the above precepts, the District Court ratified the award with the single following paragraph:

> With regard to attorneys' fees for the Rule 23(b)(2) settlement, the Court

---

[3] There is now a concomitant duty under Rule 23(h).

finds that a lodestar of $3,349,379.95 and a multiplier of 1.99 are applicable and, in light of the fact that counsel allocated approximately 80% of their time to crafting injunctive relief for the Rule 23(b)(2) class, an award of $5,333,188.21 is appropriate. *See Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir. 2009). Specifically, the Court finds that (1) Class Representatives' counsel expended large amounts of time and labor, demonstrated skill commensurate with their reputations, and achieved an excellent result in this large and complex action; (2) Class Representatives negotiated a Settlement Agreement that provides substantial benefits for over 200 million consumers; and (3) the Settlement Agreement forces Defendants to comply with the FCRA and increases consumer privacy protection measures. Finally, the Court notes that a multiplier of 1.99 is similar to those applied in similar cases. *See, e.g., In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). (Appx. 2883).

The above passage is conclusory; it does not address most of Schulman's objections raised in the fee opposition. Failure to engage with Schulman's opposition to the fee award requires vacating the award. *Thomas v. Peacock*, 39 F.3d 493, 507 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 349 (1996) (reversing where lower court's orders failed to "address…objections and make appropriate factual finding"); *Interfaith Cmt'y Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 416 (3d Cir. 2013) ("[W]here, as here, an objecting party has challenged specific types of work and states why it is contended that the hours claimed are excessive, the reviewing court must support its findings with a sufficient articulation of its rationale to allow for meaningful appellate review."); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (holding that district courts "must give a reasoned response to all non-frivolous objections") (internal quotation omitted); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) ("Any award must be accompanied by detailed findings of fact with regard to the factors considered."). "[W]hat is required is

not an empty ritual but thoughtful consideration of the factors, evidenced by findings sufficient to enable us to review the award." *Blankenship v. Schweiker*, 676 F.2d 116, 118 (4th Cir. 1982) (internal quotation omitted).

Let's unpack what the District Court did. It ignored Schulman's challenge to Class Counsel's billing rates (Appx. 2408-12). Instead, the District Court did precisely what this Circuit says it may not do: relying on an "affidavit, standing alone" as "sufficient evidence of the prevailing market rates." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 246 (4th Cir. 2009); *contrast* (Appx. 2409-10 (citing comparator cases)).

The District Court also appeared to simply rely on Class Counsel's *ipse dixit* that 80% of its work was devoted to (b)(2) class relief and only 20% was devoted to (b)(3) relief. Schulman maintained that documentation of billing records was needed to either verify or disprove this assertion. (Appx. 2413-2417). Failure to submit lodestar records "handicap[s]" would-be objectors from having all the information they "need[] to justify their objections." *Redman v. Radioshack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014). By deferring to Class Counsel on the reasonableness of their own time expenditures, the District Court errantly reassigned Class Counsel's burden to Schulman. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 230 n.12 (4th Cir. 2009) ("an attorney has the burden to establish the reasonableness of … the hours aspect of the lodestar analysis."). The District Court's paragraph approving fees made no mention of the objection to inadequate documentation.

One might think the District Court's finding of "substantial benefit" and "excellent

result" covered the objection that the fee award did not account for the class's lack of success. Not so, because the "inquiry does not end with a finding that the plaintiff obtained significant relief." *Hensley v. Eckerhart*, 461 U.S. 424, 439-40 (1983). The court must proceed to compare the amount obtained "to the amount sought." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006); *accord McAfee v. Boczar*, 738 F.3d 81, 93 (4th Cir. 2013) ("To accurately gauge…success, the district court…should have compared what [plaintiff] sought with what was awarded.").

Where a plaintiff's primary goal is damages—as must be so under the FCRA—and a plaintiff's counsel does not achieve this goal "it is unlikely that [he] may recover significant attorney fees." *Doe*, 435 F.3d at 506. It is doubtful that there has ever been a larger variance between the amount obtained for the (b)(2) class ($0) and the amount in controversy (tens or hundreds of billions of dollars in statutory damages alone). (Appx. 1560 (describing request of hundreds of billions of dollars here)). Simply, "the class [was] asked to 'settle,' yet Class Counsel … applied for fees as if it had won the case outright." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, *14 (D. Nev. Jun. 27, 2011). But the District Court never made the relevant comparison.

Nor did the District Court give any reason for awarding the exact 1.99 multiplier requested by Class Counsel. In citing a 2007 Ohio district court decision, it overlooked Schulman warning to not rely on cases that preceded the Supreme Court's watershed decision in *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). *Kenny A* establishes a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id.* at

546. It allocates "the burden of proving that an enhancement is necessary [to] the fee applicant." *Id.* at 553. Most significantly, it holds that a lodestar enhancement for performance is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 554. But the District Court here did exactly what the *Kenny A* court proscribed when it failed to "provide proper justification for the large enhancement." *Id.* at 557. In *Kenny A.* "[t]he [trial] court increased the lodestar award by 75% but, as far as the court's opinion reveals, this figure appears to be have been essentially arbitrary. Why…did the court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%." *Id.* The only difference in this case is that the District Court granted the full enhancement requested; it failed to "clearly explain its reasons for the award." *Craig v. Health & Human Servs.*, 864 F.2d 324, 328 (4th Cir. 1989), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002).

Trial judges must vouchsafe the interests of absent class members and the integrity of the class action system when they award fees. This is equally true even where a "defect" in the settlement itself insulates those fees and prevents the class from realizing any gain if they are reduced. *Redman*, 768 F.3d at 637; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011). Because the District Court did not discharge its oversight obligations, nor respond to all non-frivolous fee objections, this Court must reverse the award.

## CONCLUSION

For the multitude of reasons explained above, the District Court's order certifying a settlement class and granting final approval to the parties' settlement should be reversed and remanded for further proceedings consistent with this Court's opinion.

<table>
<tr><td>

*/s/ Richard M. Paul III*
Richard M. Paul III
Ashlea G. Schwarz
PAUL McINNES LLP
2000 Baltimore Avenue, Suite 100
Kansas City, Missouri 64108
(816) 984-8100

Samuel Issacharoff
40 Washington Square South, 411J
New York, New York 10012
(212) 998-6580

ATTORNEYS FOR APPELLANTS
AARON AND THE AARON
OBJECTORS

</td><td>

Thomas W. Bevan
Patrick M. Walsh
BEVAN & ASSOCIATES LPA, INC.
6555 Dean Memorial Parkway
Boston Heights, Ohio 44236
(330) 650-0088

Edwin F. Brooks
EDWIN F. BROOKS, LLC
6 West Broad Street
Richmond, VA 23220
(804) 648-1448

ATTORNEYS FOR APPELLANTS
THE HARDWAY APPELLANTS

Adam E. Schulman
Center for Class Action Fairness
1718 M Street NW, Suite 236
Washington, DC 20036
(610) 457-0856

PRO SE

</td></tr>
</table>

### CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,265 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Garamond 14 point font.

Date: December 9, 2014                    _/s/ Richard M. Paul III_____
                                          Attorney for Appellants

CERTIFICATE OF SERVICE

I certify that on December 9, 2014, I electronically filed the foregoing with the Clerk of court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

David N. Anthony
TROUTMAN SANDERS, LLP
P.O. Box 1122
Richmond, VA 23218-1122
David.anthony@troutmansanders.com

Leonard A. Bennett
Susan M. Rotkis
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
lenbennett@clalegal.com
srotkis@clalegal.com

Michael A. Caddell
Cynthia B. Chapman
CADDELL & CHAPMAN
1331 Lamar Street, Suite 1070
Houston, TX 77010
mac@caddellchapman.com
cbc@caddellchapman.com

Matthew J. Erausquin
CONSUMER LITIGATION
ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
matt@clalegal.com

James A. Francis
David A. Searles
John Soumilas
FRANCIS & MAILMAN, P.C.
Land Title Building
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Dale W. Pittman
112-A West Tabb Street
Petersburg, VA 23803-3212
dale@pittmanlawoffice.com

Ronald I. Raether, Jr.
FARUKI IRELAND & COX PLLC
500 Courthouse Plaza, SW
10 North Ludlow Street
Dayton, OH 45402
rraether@ficlaw.com

*/s/ Richard M. Paul III*